# Third District Court of Appeal

## State of Florida

Opinion filed November 4, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2193
Lower Tribunal No. 10-38865
_____

## Manuel A. Penalver, M.D., et al.,
Petitioners/Defendants,

vs.

## Netsai Masomere,
Respondent/Plaintiff.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Sarah I. Zabel, Judge.

Quintairos, Prieto, Wood & Boyer, P.A., and Robert Cousins and Scott C. Sankey (Fort Lauderdale); Hicks, Porter, Ebenfeld & Stein, P.A., and Dinah Stein and Shannon Debus-Horn, for petitioners/defendants.

Podhurst Orseck, P.A., and Joel D. Eaton, for respondent/plaintiff.

Before SUAREZ, C.J., and EMAS and FERNANDEZ, JJ.

FERNANDEZ, J.

Petitioners Manuel A. Penalver, M.D., and 21st Century Oncology, LLC,

petition this Court for a Writ of Certiorari, quashing the trial court's August 14,

2014 order granting respondent Netsai Masomere's motion for post-trial juror interviews. Because the jurors' litigation histories were immaterial and irrelevant to jury service in this case, we grant certiorari and quash the trial court's order.

Masomere brought the underlying medical malpractice action against Dr. Penalver and 21st Century Oncology, LLC, alleging that Dr. Penalver negligently performed surgery on her. During voir dire, some of the members of the venire stated they had litigation histories. The trial court asked Juror Stephen Wall, "[h]ave you or a family member or close friend been involved in any type of legal proceeding or do you know lawyers that you're close to?" Juror Wall replied, "[O]ther than the trial that I was on, no."

The trial court asked Juror Richard Ridley whether he had "[a]ny involvement in the legal system." Juror Ridley replied, "I think my wife a long, long time ago at the hospital. My wife a long, long time ago at the hospital." The trial court further questioned Juror Ridley, but Juror Ridley could not remember any details about the case in which his wife, a nurse, was involved.

The trial court also asked Juror Giovanna Del Pozzo whether she had any involvement in the legal system, and she replied, "I have not been involved in the legal system in any way." The trial court then asked her whether any of her family members or friends had any experience with the legal system. Juror Del Pozzo asked to discuss her answer in private, and she told the trial court and counsel that

2

in 2001, her mother was convicted of Medicare fraud, but that this experience did not sway her view of the legal system. Jurors Wall, Ridley and Del Pozzo were selected as jurors.

In addition, the trial court asked members of the venire about their litigation histories. More than a dozen members stated they had some previous litigation history. Masomere's counsel did not ask any prospective jurors about their litigation history or ask any follow-up questions.

After a three-week jury trial, the jury returned a verdict in favor of Dr. Penalver. Masomere then moved for a new trial and filed a motion for juror interviews, according to Florida Rule of Civil Procedure 1.431(h). Masomere alleged that after she investigated court records, it appeared that jurors Wall, Ridley and Del Pozzo concealed litigation history during voir dire.

Masomere argued that a review of Miami-Dade County court records for Juror Wall revealed three cases. Two cases, a landlord-tenant matter and a contract indebtedness action, were each over thirty years old, and another civil case was over twenty years old. In all three of these cases, a "Stephen Wall" was a named defendant.

Masomere further claimed that a review of Broward County records for Juror Ridley revealed an automobile negligence case that was over ten years old in which "Richard Ridley" was the named plaintiff. Regarding Juror Del Pozzo,

3

Masomere claimed that Miami-Dade County records revealed an eviction case in which "Giovanna Del Pozzo" was the defendant. Masomere thus alleged that she was entitled to a new trial. The trial court subsequently granted the motion for juror interviews but deferred ruling on the motion for a new trial until after completion of the juror interviews. This constituted error.

We have jurisdiction to issue a writ of certiorari under article V, section 4(b)(3) of the Florida Constitution, and rule 9.030 (b)(3), Florida Rules of Appellate Procedure. As we held in Parra v. Cruz, 59 So. 3d 211, 212-13 (Fla. 3d DCA 2011), certiorari relief is appropriate where a trial court departs from the essential requirements of the law by ordering juror interviews without determining, according to De La Rosa v. Zequeira, 659 So. 2d 239 (Fla. 1995), whether any information elicited through those interviews will entitle the moving party to a new trial.

The general policy in Florida is that post-trial juror interviews are disfavored and are only allowed in "rare instances." Parra, 59 So. 3d at 212; see also Harbour Island Sec. Co., Inc. v. Doe, 652 So. 2d 1198, 1199 (Fla. 2d DCA 1995) (quashing order allowing juror interview and reiterating the belief that there is "strong public policy against juror interviews"); Schmitz v. S.A.B.T.C. Townhouse Ass'n, Inc., 537 So. 2d 130, 131 (Fla. 5th DCA 1988) (holding that post-trial juror interviews should "be rarely granted"). Moreover, a post-trial juror interview "is never

4

permissible unless the moving party has made sworn factual allegations that, if true, would require a trial court to order a new trial." Baptist Hosp. of Miami, Inc. v. Maler, 579 So. 2d 97, 100 (Fla. 1991); see also Egitto v. Wittman, 980 So. 2d 1238, 1240 (Fla. 4th DCA 2008).

In De La Rosa v. Zequeira, 659 So. 2d 239 (Fla. 1995), the Florida Supreme Court adopted a three-part test to determine whether a juror's nondisclosure of information during voir dire warrants a new trial. "First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence." Id. at 241.

Under the first prong of the De La Rosa test, information is material only when "omission of the information prevented counsel from making an informed judgment–which would in all likelihood have resulted in a peremptory challenge." State Farm Fire & Cas. Co. v. Levine, 837 So. 2d 363, 365 (Fla. 2002). In addition, materiality is analyzed on a case-by-case basis. Birch ex rel. Birch v. Albert, 761 So. 2d 355, 359 (Fla. 3d DCA 2000). Factors the court considers in evaluating materiality include the remoteness in time of a juror's prior exposure to the legal system, the character and extensiveness of the experience, and the juror's posture in the litigation. Roberts v. Tejada, 814 So. 2d 334, 342 (Fla. 2002).

5

The trial court departed from the essential requirements of the law when it granted Masomere's motion for juror interviews as to Jurors Wall, Ridley and Del Pozzo because Masomere did not satisfy the three-part test established in De La Rosa. The litigation histories of Jurors Wall, Ridley and Del Pozzo were not "relevant and material to their jury service." Masomere thus did not demonstrate that she was entitled to a new trial.

Even if it were found that Juror Wall is the "Stephen Wall" in the records that Masomere found, Juror Wall's litigation history is too remote in time and not relevant or material to the jury service in Masomere's case. Two of the cases ended over thirty years ago. Furthermore, the third case in which "Stephen Wall" was a named defendant was dismissed over twenty years ago. Thus, Juror Wall's nondisclosure did not establish that Masomere was entitled to a new trial. See Hoang Dinh Duong v. Ziadie, 125 So. 3d 225, 227-29 (Fla. 4th DCA 2013); Gamsen v. State Farm Fire & Cas. Co., 68 So. 3d 290, 294 (Fla. 4th DCA 2011); McCauslin v. O'Connor, 985 So. 2d 558, 561-63 (Fla. 5th DCA 2008); Leavitt v. Krogen, 752 So. 2d 730, 732 (Fla. 3d DCA 2000).

The case that Juror Ridley was involved in was also too remote in time and thus irrelevant and immaterial. It ended more than ten years ago. In addition, Juror Ridley's involvement as a plaintiff in that case, as well as the difference in the nature of that case from the case before us, further supports the finding that the

6

information was not material to his jury service in this case. Thus, no juror interview should have been granted. See Gamsen, 68 So. 3d at 294; Leavitt, 752 So. 2d at 732.

Juror Del Pozzo's litigation history is likewise immaterial to her jury service. Even if it were found that Juror Del Pozzo was the same Del Pozzo as in the eviction action, this previous litigation history is immaterial to her service as a juror because the eviction proceeding is dissimilar to the present medical malpractice action, and she was only minimally involved (as evidenced by the case lasting only two months). See Roberts, 814 So. 2d at 342.

In sum, Masomere did not meet the De La Rosa three-part test because she did not establish the first prong of the test. We thus conclude that the trial court departed from the essential requirements of law when it granted Masomere's motion for post-trial juror interviews because the jurors' litigation histories were immaterial and irrelevant to jury service. Accordingly, we grant the petition for writ of certiorari and quash the order under review.

Petition for writ of certiorari granted; order quashed.